395 So.2d 720 (1981)
Peggy J. NAPOLI
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.
No. 80-C-1870.
Supreme Court of Louisiana.
March 2, 1981.
J. Michael Morrow, Morrow & Morrow, Opelousas, for plaintiff-applicant.
Horace C. Lane, Baton Rouge, for defendant-respondent.
DIXON, Chief Justice.
Peggy J. Napoli was a passenger in an automobile when it was struck from the rear on November 1, 1977. She brought an action against defendant Nick Cicero, the driver of the offending vehicle, and State Farm Mutual Automobile Insurance Company, his insurer.
On the trial of the case, the jury returned the following verdict:
"Judgment in favor of plaintiff, Peggy J. Napoli, and against the defendants in the amount of $0."
The plaintiff was subsequently cast with the costs of court. The Court of Appeal affirmed the judgment. 387 So.2d 1351 (La.App. 1st Cir. 1980).
About a month after the accident the plaintiff was hospitalized and underwent surgical removal of herniated disc material and fusion of cervical vertebrae. Because of the representation that the collision was of forceful impact, and that plaintiff continued to suffer from injuries which she claimed she received in the accident, writs were granted to review the judgments of the courts below.
The record does not support plaintiff's claim.
*721 Plaintiff had suffered intermittently from pains in her neck for several years. She had received medical treatment for the pains as recently as a month before the accident. Although she was a young woman, the medical opinion was that she suffered from degenerative disc disease before the accidenta disease which caused her disabling pain both before the accident and after the accident. The medical testimony was that her symptoms were the same before the accident and after the accident. There was no medical evidence that the accident had caused her neck injury.
Plaintiff testified only that she bumped her knee in the accident, and that she was shaken so that the combs fell out of her hair. At the time of the accident, she denied any injury. There was no testimony from her companions that she suffered in any way at the time of the accident. The record is silent as to any inconvenience she might have been caused. Only her fiance, who was with her, testified that on the night of the accident plaintiff complained about her knee "and a little soreness, say about a week and a half, a week later or so, she said that her neck was real stiff and she had been getting some headaches, and then progressively it got worse." The knee injury seems to have lost any significance; it is not further explained in the record.
There is no doubt about the progress of plaintiff's condition in the weeks after the accident. The doctors, however, attributed her complaints entirely to the preexisting degenerative disc disease.
A myelogram made when plaintiff entered the hospital a month after the accident indicated a herniated disc in the cervical area. The medical testimony indicated that the injury was probably of long duration. There is no contradictory testimony. We must agree with the courts below that the record does not support a finding that the accident caused the injury.
As for court costs, C.C.P. 1920 provides:
"Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."
Because the plaintiff failed to prove her case, she was properly cast with costs.
The judgment of the Court of Appeal is affirmed, at plaintiff's cost.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissenting.
Plaintiff, Peggy Napoli, was a passenger in a car which was struck from the rear; the impact gave her a sever jolt. The force of the collision is indicated by the fact that defendant's car was a total loss. She had had a prior problem with her neck but was pain-free and asymptomatic when the accident occurred. Slightly over a month later, she required major surgery. The medical evidence is that it was more probable than not that the accident aggravated a pre-existing condition.[1] The jury was clearly *722 wrong in awarding Peggy Napoli zero damages.
I respectfully dissent.
NOTES
[1] Dr. James Thomas Kilroy, an orthopedic surgeon, saw Peggy Napoli twice before the accident. On September 7, 1977, she had neck pain, and he diagnosed cervical radiculitis, a pinched nerve in the neck. Conservative treatment was prescribed: physical therapy, valium and pain pills. On September 23, 1977, Peggy Napoli had pain inside her left shoulder blade. She received an injection of xylocain, decadron and celestone and was told to apply ice packs. Dr. Kilroy said such an injection sometimes cures a patient by giving total relief from pain but "any little thing" can aggravate a nerve injury. (TR.103.) The testimony of plaintiff and other lay witnesses was that Ms. Napoli's pain subsided after the injection but flared up again after the accident. The accident occurred on November 1, 1977. Peggy Napoli returned to Dr. Kilroy on December 4, a Sunday, when her finance' called him. She had "severe pain" in the posterior neck and intrascapular area. (TR.94.) She had muscle spasms and was admitted to the hospital. Dr. Kilroy admitted: "she had more spasm and she was hurting more" when she was admitted to the hospital in December than she had in September. (TR.108.) In Dr. Kilroy's opinion, Peggy Napoli had had a relapse when he admitted her to the hospital. He did not attribute the relapse to trauma, but admitted that the accident could have aggravated her condition.

Dr. John Tassin, a general practitioner, testified that there was a definite correlation between the accident and Peggy Napoli's subsequent hospitalization and surgery.
Dr. David Klein, a neurological surgeon, said that trauma can aggravate a pre-existing condition, particularly a degenerative situation involving the spine. It was difficult in Ms. Napoli's case to "be certain, absolutely certain that the accident was an aggravating factor" but that was a reasonable suspicion. (TR.137.)
Dr. Robert Hanchey, a neurosurgeon, saw Peggy Napoli in the hospital on December 6, 1977. She was in severe pain with muscle spasms in the cervical and shoulder region. According to Dr. Hanchey, a disc problem can be aggravated by movement or injury; the accident could have aggravated Ms. Napoli's condition. He performed a spinal fusion at the C-6 and C-7 levels. Peggy Napoli still has a problem at the C-4 and C-5 levels which may require surgery in the future. He said it was unusual for someone twenty-seven years of age like Ms. Napoli to have this type of disease at all. In his opinion, the degenerative changes in the neck at C-4 and C-5 and, to a lesser extent, at C-6 and C-7, would have been present before the surgery but not necessarily symptomatic.